Mark **BOEDDEKER,** Petitioner and Appellee,

v.

Patricia **REEL,** Respondent and Appellee,

**N.B. and A.B., minor children, Respondents and Appellants.**

Civ. No. 930345.

Supreme Court of North Dakota.

June 15, 1994.

Gary E. Euren, Guardian Ad Litem (argued), Grand Forks, for respondents and appellants.

James R. Brothers (argued), Wold, Johnson, Feder, Brothers, Beauchene & Schimelpfennig, Fargo, for petitioner and appellee Mark Boeddeker.

Bruce D. Johnson, Johnson, Rodenburg & Trader, Fargo, for respondent and appellee Patricia Reel.

NEUMANN, Justice.

The guardian ad litem appeals from confirmation of the district court referee's custody orders incorporating the stipulation signed by both parents. We affirm.

The Traill County Juvenile Court found that Mark Boeddeker and Patricia Reel's two minor children were deprived due to drug and alcohol abuse on the part of both parents. *See* NDCC ch. 27–20 (Uniform Juvenile Court Act). Legal custody of the children was granted to Traill County Social Services. Physical custody of the children changed back and forth among Boeddeker, Reel, the grandparents, and foster care. At a juvenile court hearing in April 1992, the county, Boeddeker, and Reel stipulated that the reasons for the original finding of deprivation no longer existed. Deprivation would cease upon a custody determination by the district court, with the juvenile court retaining legal custody until custody proceedings were completed in the district court.

Before a hearing on Boeddeker's custody petition could be held, an allegation of sexual abuse was brought against him. By order of the juvenile court, both children were placed in foster care. Upon a finding of no probable cause, the juvenile referee dismissed the petition. The children remained in foster care pending a decision on custody.

On March 10, 1993, the district court appointed Gary Euren as guardian ad litem (GAL) for the two minor children during the custody proceeding. In August of 1993, Boeddeker and Reel signed a stipulation regarding the custody of the children. The terms of the agreement provided that the parents would have joint legal custody, and share physical custody. Reel would have physical custody of the children from June 1 through August 1 each year, and Boeddeker would have physical custody for the balance of the year. A custody hearing was scheduled for August 31, 1993.

At the hearing, the district court referee had the opportunity to review the GAL's report[1] and the parties' stipulation. Both parents testified that the custody stipulation was in the best interests of the children. The GAL recommended that custody remain with Traill County because, in his opinion, neither parent was fit to care for the children. The GAL did not introduce additional evidence to support his opposition to the custody stipulation.

The referee accepted the terms of the stipulation, and incorporated them into the findings of fact and conclusions of law. The GAL filed a timely request for review and stay of the referee's order. The district court affirmed the referee's findings of fact and conclusions of law. In its order confirming the referee's findings and conclusions, the district court noted that "under Chapter 14–14 termination of parental rights is not an alternative disposition."

■ The children, through their GAL, appeal from the order of confirmation entered by the district court. The issue raised on appeal is "[w]hether the best interests of the child standard is met when the issue of child custody is decided by stipulation of the parents without sworn testimony or evidence being presented when the issue of fitness of the parents is raised." Specifically, the GAL argues that the referee's acceptance of the stipulation without an evidentiary hearing was clearly erroneous.

We agree with the district court. A custody hearing brought under the Uniform Child Custody Jurisdiction Act is not the correct forum for deprivation proceedings or termination of parental rights proceedings. This is not a situation where "exceptional circumstances" warrant that custody of the two minor children be awarded to a third party.

We are not convinced the referee erred in awarding custody of the two minor children to their natural parents. The GAL argues the referee and district court erred in not awarding custody of the children to Traill County Social Services. The GAL's interpretation of NDCC § 14–09–06.1[2] is that a trial court can award custody of a minor child to any "person, agency, organization, or institution" as long as there are "exceptional circumstances" in the child's best interests. Although there have been cases where trial courts have found "exceptional circumstances," this is not such a case.

■ The underlying issue here is how to deal with possible parental unfitness in district court custody determinations. Our statutory scheme in North Dakota addresses child custody in more than one title of the Century Code. *See* NDCC Title 14, "Domestic Relations and Persons," and Chapter 27–20, "Uniform Juvenile Court Act." We read these statutes so they complement each other. NDCC § 1–02–07. Underlying custody statutes is the belief that parents generally have a paramount and constitutional right to the custody and companionship of their children superior to that of any other person. *E.g., Hust v. Hust*, 295 N.W.2d 316, 318 (N.D.1980) (divorce proceeding under chapters 14–05 and 14–09). Although not an absolute right, "[t]here is a presumption that parents are fit and the burden of disproving this presumption of parental fitness is on the person challenging it." *In re K.R.A.G.*, 420 N.W.2d 325, 327 (N.D.1988).

■ The issue of child custody is addressed in both district courts and juvenile courts. Custody proceedings under chapter 14–14 can involve matters exclusively in the jurisdiction of the district court (i.e., divorce), exclusively in the jurisdiction of the juvenile court (i.e., deprivation), or matters within the jurisdiction of both. *In re D.R.J.*, 317 N.W.2d 391, 394 (N.D.1982).

---

1. The GAL inadvertently filed the report with the wrong court, but a copy was accepted into evidence at the hearing.

2. *"14–09–06.1. Awarding custody—Best interests and welfare of child.* An order for custody of an unmarried minor child entered pursuant to this chapter must award the custody of the child to a person, agency, organization, or institution as will, in the opinion of the judge, promote the best interests and welfare of the child. Between the mother and father, whether natural or adoptive, there is no presumption as to who will better promote the best interests and welfare of the child."

■ The juvenile court has exclusive jurisdiction of deprivation hearings. NDCC § 27–20–03(1); *e.g., In re D.R.J.,* 317 N.W.2d at 394. Only under exceptional circumstances is this jurisdiction shared with the district court. *See e.g., In re D.R.J.,* 317 N.W.2d at 394 (custody dispute pitted psychological parent against natural parent). Such an exceptional circumstance does not exist in this case. Unlike our cases in which we have discussed "exceptional circumstances," no identifiable third party seeks custody of these two children. *See Worden v. Worden,* 434 N.W.2d 341 (N.D.1989) (husband sought custody of mother's child); *Patzer v. Glaser,* 396 N.W.2d 740 (N.D.1986) (grandparents sought custody of grandchild); *Daley v. Gunville,* 348 N.W.2d 441 (N.D. 1984) (grandmother sought custody of grandchild); *In re D.R.J.,* 317 N.W.2d at 391 (grandmother sought custody of grandchild); *Hust v. Hust,* 295 N.W.2d 316 (N.D.1980) (grandparents sought custody of grandchild). Neither Traill County Social Services nor any other agency or identifiable individual requested custody of the children at the custody hearing.

■ Under NDCC chapter 27–20, our version of the Uniform Juvenile Court Act, the juvenile court cannot remove a child from the parents' custody in the best interests of the child unless there is a grave reason to do so, as when the child has been found to be a deprived child. *Id.* at 319; *but see In re T.M.M.,* 267 N.W.2d 807, 813 (N.D.1978), *reh'g denied* (under § 27–20–30, deprived "child does not necessarily have to be removed from the custody of his parent"). Harmony in statutory construction requires the same showing in custody proceedings under Title 14. *See* § 14–09–06.1. It would be contrary to legislative intent to allow a lesser showing in district court than in juve-

nile court; to do so would be to designate the district court a backdoor to custody proceedings.[3]

■ We distinguish this case from those in which we have considered "exceptional circumstances." Because there are no "exceptional circumstances" warranting consideration, this is not an appropriate situation for the district court and juvenile court to share jurisdiction. We affirm the trial court's unwillingness to address the issue of deprivation. "Where a natural parent's fitness to provide a minimal standard of adequate care for a child is at issue, proceedings under the Uniform Juvenile Court Act, Chapter 27–20, N.D.C.C., are available to protect and safeguard the interests of both parent and child." *Worden v. Worden,* 434 N.W.2d at 343. If placement of the children with their parents places the children in a dangerous environment, appropriate proceedings can be commenced under chapter 27–20. *Id.; see also J.L.R. v. Kidder County Soc. Serv. Bd.,* 295 N.W.2d 401, 403 n. 1 (N.D.1980) (deprivation hearings should be conducted separately from custody hearings) *reh'g denied.* It is improper to deprive the parents of custody of their children on the ground of unfitness in these custody proceedings, because parental fitness is not the appropriate test. *Id.* at 401.

■ The GAL argues the trial court erred in accepting the parents' stipulation. Specifically, he argues that the referee should have had an evidentiary hearing to determine the best interests of the children. We agree with the GAL that trial courts have the authority to accept or reject divorce stipulations. *Aanderud v. Aanderud,* 469 N.W.2d 154, 155 (N.D.1991). "This court has often stated that a trial court is not bound to accept stipulations which purport to deter-

---

3. Differences between the juvenile court and district court include: the scope of appellate review, rules of evidence, and burden of proof. The scope of review of district court custody cases is set forth in Rule 52(a) of the North Dakota Rules of Civil Procedure. Rule 52(a) provides that child custody determinations are findings of fact and will only be reversed if clearly erroneous. *E.g. Weber v. Weber,* 512 N.W.2d 723 (N.D.1994) (divorce). In contrast, in reviewing decisions of juvenile courts under chapter 27–20, "we reex-

amine the evidence in a manner similar to a trial de novo, but we give appreciable weight to the findings of the juvenile court." *In re C.K.H.,* 458 N.W.2d 303, 305 (N.D.1990). Unlike custody proceedings in district court, the adjudicatory phase of deprivation proceedings in juvenile court requires that deprivation be shown by clear and convincing evidence. NDCC § 27–20–29(3). Additionally, the rules of evidence do not apply in the dispositional phase of deprivation hearings. N.D.R.Ev. Rule 1101(d)(3).

mine questions regarding the custody and care of the children of a marriage if it finds that it is not in the best interests of the children to do so." *Tiokasin v. Haas,* 370 N.W.2d 559, 562 (N.D.1985). We do not agree that the referee and trial court failed to consider the best interests of the children.

When reviewing custody determinations, we do not second guess the trial court's findings. On review, custody determinations are not reversed unless clearly erroneous. N.D.R.Civ.P. Rule 52(a); *e.g. Weber v. Weber,* 512 N.W.2d 723 (N.D.1994).

Of particular importance in this case is the fact that the GAL was never denied the opportunity to offer additional evidence regarding the best interests of the children. Both parents were present at the hearing and testified; the GAL did not request to examine either of them in court. Additionally, both Boeddeker and Reel testified that the terms of the stipulation were in the best interests of the children. Having failed to offer or request additional evidentiary inquiry at the hearing, the GAL is not now in a position to request it on appeal. *See Weber,* 512 N.W.2d at 723 (attorney who failed to request opportunity to review expert's report at trial was not in a position to object on appeal).

We are not convinced the referee failed to consider the best interests of the children. There is sufficient evidence in the record for the referee to have found the stipulation was in the children's best interests. No evidence was offered to indicate there had been a change since the time the juvenile court made a finding of no probable cause.

If the children are in need of protection, the proper proceedings should be commenced in juvenile court without delay. If there is a change of circumstances and one of the parents seeks custody modification, the children's best interests can be reassessed at that time.

For these reasons, we affirm the order of the district court.

VANDE WALLE, C.J., and LEVINE, SANDSTROM and MESCHKE, JJ., concur.

MESCHKE, Justice, concurring.

I join in the opinion by Justice Neumann for the court. I write separately to register a concern.

On September 21, 1989, the Juvenile Court for Traill County determined that these twins were deprived and placed legal custody of them with Traill County Social Services. Since then, as Justice Neumann notes, actual physical custody has bounced around. The attorney for the father represented to the referee here, at the August 31, 1993 hearing, that "pending the outcome of this trial the children continue[d] in the legal and physical custody of [Traill County] social services for foster care placement."

The GAL believed, and reported to the referee, that "Traill County Social Services has recently recommended that parental rights should be terminated." However, the GAL presented no evidence or proof of that. If he had, I have no doubt that it would have been necessary for the court below to hold up and defer to any renewed deprivation proceeding in the Juvenile Court.

While I understand the jurisdictional separation summarized in the majority opinion and created by our past cases on this subject, there remains a need for formal notice and procedures to facilitate the separate processes.

NDCC 14–14–10 directs that, "[i]f the court learns ... that a person not a party to the custody proceeding has physical custody of the child ..., it shall order that person to be joined as a party and to be duly notified of the pendency of the proceeding and of his joinder as a party." *See also* NDCC 14–14–02(3): " 'Custody proceeding' includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect, dependency, and deprivation proceedings."

Since the Traill County Social Service agency had continuing physical custody of these two children, I believe that the referee should have ordered the joinder of and notice to the custodial agency. It appears that this was not done, although the attorney for the father did represent to the referee that "[n]o-

tice of this hearing was given to Traill County, and they have chosen not to appear."

On this record, the exact status of the children at the time of the hearing is unclear. However, the question of notice to or joinder of the custodial agency was not presented on this appeal. Yet, in another case, a court facing this jurisdictional separation should, at least, make certain of notice to and joinder of any physical custodian of any child whose future the court is affecting.