2003 ND 105

**Gail Yvonne HOGAN, Plaintiff and Appellant,**

v.

**Wayne Thomas HOGAN, Defendant and Appellee.**

No. 20020240.

Supreme Court of North Dakota.

June 17, 2003.

Benjamin E. Thomas, Wold Johnson, P.C., Fargo, for plaintiff and appellant.

James A. Reisnour, Mackenzie & Reisnour, Jamestown, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1]  Gail Hogan appeals a Southeast Judicial District Court judgment granting Wayne Hogan extended visitation with their minor children and awarding him thirty percent of the property received by Gail Hogan in gifts and bequests from her parents.  We affirm.

I

[¶ 2]  Gail and Wayne Hogan were married on October 21, 1989, in Jamestown, and they have three minor children.  Gail Hogan filed for divorce on January 2, 2001.  The case was tried on December 13, 2001, and January 18, 2002.  At trial, a custody investigator testified that in her opinion primary physical custody should be given to Gail Hogan.  She testified she recommended that during the school year, Wayne Hogan receive visitation every other weekend, from Thursday afternoon until Monday morning, and have physical custody of the children during the summer months.  The district court granted "Gail primary physical custody of the children with Wayne to have extended visitation from the first Sunday after school adjourns for the summer until the first Saturday after the completion of the first nine-week term of school in the fall."

[¶ 3]  The court distributed the property as the parties had agreed, except for three pieces of property received by Gail as gifts and bequests from her parents.  The properties include an interest in the Gallagher Land Trust, established for Gail Hogan by her father seven years before her marriage, 746 shares in North Star Holding Company, Inc., inherited from her father in 1994, and a share of her mother's estate, estimated by Gail to be worth $100,000, although its value had not been calculated by the trial date because her mother had died just the previous month.  At the time of trial, none of the assets had been paid out to Gail Hogan.  The district court granted Wayne Hogan thirty percent of the trust assets and thirty percent of Gail Hogan's share of the distribution from the estates of each of her parents, to be transferred to Wayne Hogan when those property items become available to Gail Hogan.

[¶ 4]  The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06.  This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01, 28–27–02.  The appeal was timely under N.D.R.App.P. 4(a).

II

[¶ 5]  Gail Hogan argues the district court's award of "defacto joint custody" to Wayne Hogan was clearly erroneous.  Under the district court's custody order, Gail Hogan was awarded custody of the children, and Wayne Hogan was awarded extended visitation.  The district court did not grant defacto custody to Gail and Wayne Hogan; therefore, Gail Hogan's argument of defacto custody is not valid.

[¶ 6]  We will not reverse a trial court's finding on visitation unless it is clearly erroneous.  *Love v. DeWall,* 1999 ND 139, ¶ 6, 598 N.W.2d 106 (citing *Lohstreter v. Lohstreter,* 1998 ND 7, ¶ 10, 574 N.W.2d 790).  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the evidence, this Court has a definite and firm

conviction a mistake has been made. *Id.* We have consistently summarized our process of limited review of a trial court's custody award under N.D.R.Civ.P. 52(a), stating, in *Schmaltz v. Schmaltz:*

"In a divorce proceeding, the trial court must award custody of the minor children based upon a determination of the best interests and welfare of the children. The trial court is vested with substantial discretion in matters of custody and in the determination of what is in the best interests of the children. A trial court's custody determination is a finding of fact that will not be set aside on appeal unless it is clearly erroneous. A trial court's findings of fact are presumptively correct. The complaining party bears the burden of demonstrating on appeal that a finding of fact is clearly erroneous. In reviewing findings of fact, we must view the evidence in the light most favorable to the findings. A choice between two permissible views of the evidence is not clearly erroneous. Simply because we might view the evidence differently does not entitle us to reverse the trial court. A finding of fact is clearly erroneous only if the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made."

*Schmaltz,* 1998 ND 212, ¶ 6, 586 N.W.2d 852 (quoting *Reimche v. Reimche,* 1997 ND 138, ¶ 12, 566 N.W.2d 790 (citations omitted)).

[¶ 7] Section 14–09–06.2(1), N.D.C.C., sets out the guidelines for the best interests of the child:

For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence....

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

*l.* The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

[¶ 8] Upon considering the relevant factors for awarding custody under N.D.C.C. § 14–09–06.2, the trial court concluded it would be in the children's best interests to award "Gail primary physical custody of the children with Wayne to have extended visitation from the first Sunday after school adjourns for the summer until the first Saturday after the completion of the first nine-week term of school in the fall."

[¶ 9] Gail Hogan argues the trial court should have followed the advice of the custody investigator, who recommended:

• Gail to have the children for the school year and Wayne to have them for the summer.

• With weekend visitation every other weekend and one night a week on the alternate week. The weekend begins on Thursday after school and ends on Monday morning, during the school year. For the summer the [sic] Gail gets them on her weekend from Friday after work until Monday morning with one contact day during the alternate week.

[¶ 10] "By statute, the trial court is vested with the authority to award custody to the parent who will promote the best interests and welfare of the child." *Schmaltz*, 1998 ND 212, ¶ 9, 586 N.W.2d 852 (citing N.D.C.C. § 14–09–06.1).

The court cannot delegate this responsibility to a guardian ad litem or other independent investigator. The weight assigned to a guardian ad litem's testimony and recommendation is within the trial court's discretion, and the court does not have to, nor should it, regard a guardian ad litem's testimony and recommendation as conclusive.

*Schmaltz*, at ¶ 9 (quoting *Schneider v. Livingston*, 543 N.W.2d 228, 233 (N.D.1996) (citations omitted)).

[¶ 11] "Although it is appropriate to consider the opinion of the guardian ad litem in determining custody, it is within the trial court's discretion to assign the weight given to such evidence." *Hurt v. Hurt*, 2001 ND 13, ¶ 15, 621 N.W.2d 326. The custody investigator found both parents to have equal ability in providing for the needs of their children. She concluded, "The boys are attached to both parents and love them both very much.... Both parents have the skills to be a good parent." She stated in her custody report that her reasons for recommending Gail Hogan be awarded physical custody are that Gail implements parenting skills "better than Wayne does" and "Gail appears to provide the most stability for the boys. They are in their own home and continuing with all their various activities."

[¶ 12] The custody investigator's recommendation does not give any reason why Wayne should not have extended visitation with the children. The trial court stated it had "found slightly in favor of Gail as to custody in the consideration of the appropriate factors." However, it did not find that a custody award in complete relation to the school year was warranted. That the trial court's decision did not follow the custody investigator's recommendation is not convincing evidence that the court failed to adequately consider the report or erred in exercising its judgment. The trial court stated the award was based on a consideration of the best interests of the children, and we conclude there is no evidence to the contrary. The trial court

was not clearly erroneous in its child custody determination.

## III

[¶ 13] Gail Hogan argues the court erred when it failed to determine a value for the property bequeathed and given to her by her parents and included that property in the division of the marital estate.

[¶ 14] "The trial court's determinations regarding division of property are treated as findings of fact and will not be reversed unless they are clearly erroneous." *Mellum v. Mellum*, 2000 ND 47, ¶ 14, 607 N.W.2d 580.

[¶ 15] We distinguish the present case from cases such as *Urlaub v. Urlaub*, in which this Court remanded for the purpose of determining a definite value of the real and personal property owned by the parties. 325 N.W.2d 234 (N.D.1982). In *Urlaub*, both parties submitted evidence of the net worth of the marital property, the value of which was in dispute. *Id.* at 235. The trial court failed to determine the property value from the evidence presented by the parties, and the record therefore reflected no foundation for the trial court to make an equitable distribution. *Id.* at 237. Thus, this Court was unable to determine whether the trial court's distribution was clearly erroneous. *Id.*

[¶ 16] A trial court may grant parties a percentage of the marital or nonmarital estate in a property division if, at the time of the trial, there are insufficient assets for a division or the valuation is too speculative. *Zander v. Zander*, 470 N.W.2d 603, 605 (N.D.1991) (the trial court awarded the wife a percentage of the husband's retirement benefits); *van Oosting v. van Oosting*, 521 N.W.2d 93, 98 (N.D. 1994) (the trial court should award a percentage of one spouse's future payments

from a vested credit trust, treated as inherited property, to the other spouse in a property distribution). We have cited decisions of the Supreme Court of Minnesota that prescribe "a rule for the equitable distribution of property rights which are difficult or impossible to evaluate—ordering apportionment of the future benefits only if and when such benefits are paid." *Glass v. Glass*, 344 N.W.2d 677, 678 (N.D. 1984) (citing *Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn.1983)).

[¶ 17] We have held that in certain cases, marital property "may be divided at the time of divorce by either awarding the present value of the benefits, or when there are insufficient assets for a present division or when present valuation is too speculative, by awarding a percentage of future payments." *van Oosting*, 521 N.W.2d at 98 (citing *Zander*, 470 N.W.2d at 605). The latter of the two methods "should be used where present value determinations are unacceptably speculative or there are not enough assets to equitably split the retirement benefits at the time of the divorce." *Zander*, at 606. At the time of trial, the value of Gail Hogan's interest in the Gallagher Land Trust, the value of her shares of North Star Holding Company, and the value of her inherited share of her mother's estate were not available to calculate and were therefore too speculative for the court to determine a definite value. At the time of trial, Gail Hogan argued the value of the property was speculative, and now faults the district court for finding the value was speculative. We conclude the district court was not clearly erroneous in awarding Wayne Hogan a percentage of Gail Hogan's gifts and bequests without first having established a definitive value for the property. *van Oosting*, at 98; *Zander*, at 605–06.

[¶ 18] Gail Hogan argues that the inclusion of the property and the

award of thirty percent to Wayne Hogan resulted in an excessive award and an inequitable distribution. It is well-settled in our case law that a property division need not be equal to be equitable, but a substantial disparity must be explained. *Young v. Young*, 1998 ND 83, ¶ 10, 578 N.W.2d 111; *Fisher v. Fisher*, 1997 ND 176, ¶ 15, 568 N.W.2d 728. "A trial court's findings on matters of property division will not be set aside on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a), or they are induced by an erroneous view of the law." *Wald v. Wald*, 556 N.W.2d 291, 294 (N.D.1996).

[¶ 19] Section 14–05–24, N.D.C.C., requires the court to distribute the parties' real and personal property "as may seem just and proper." There are no set rules for distributing the property of a marriage, but this Court follows established case law setting out certain guidelines, known as the *Ruff–Fischer* guidelines, to assist in its determination. *Corbett v. Corbett*, 2002 ND 103, ¶ 4 n. 1, 646 N.W.2d 677. The trial court must first establish the parties' net worth before considering the *Ruff–Fischer* guidelines. *Winter v. Winter*, 338 N.W.2d 819, 821 (N.D.1983). The district court found "the value of the marital estate to be $140, 212.07 plus the value of the trust, and Gail's share of the estates of her parents. The net value of the marital estate is ($140,212.07–$130,300.49) $9,911.58, plus the value of those assets."

[¶ 20] In a divorce, the court may award the separate property of one spouse to the other when an equitable distribution so requires. *Fraase v. Fraase*, 315 N.W.2d 271, 274 (N.D.1982). The origin of the property is simply one factor to consider, even if the property was acquired before or inherited during the marriage. *Svetenko v. Svetenko*, 306 N.W.2d 607, 613 (N.D.1981).

[¶ 21] We have repeatedly held, "separate property, whether inherited or otherwise, must initially be included in the marital estate." *Young*, 1998 ND 83, ¶ 10, 578 N.W.2d 111. "We have never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse." *Id.* "As we held in *Gaulrapp [v. Gaulrapp]*, 510 N.W.2d [620,] 621 [(N.D. 1994)], the length of the marriage is relevant in the distribution of gifted property as part of the 'equitable' division of the marital estate. Also a lengthy marriage, in general, supports an equal division of all marital assets." *Id.*

[¶ 22] Gail Hogan argues that the couple's previous lifestyle should not be considered in the property distribution because Wayne Hogan was underemployed during their marriage and their use of the trust fund money was not a deliberate lifestyle choice but was rather the result of Wayne's failure to find sufficient employment.

[¶ 23] The trial court awarded Gail Hogan "the house of a value of $94,000.00 and other property of a value of $16,614.61, which total $110,614.61, and debt of $112,409.53, for a net value of -$1,794.92." Wayne Hogan was awarded property valued at "$16,728.00, and debt of $12,890.66, for a net of $3,837.34." The remaining assets were a joint checking account worth $9,849.46 and Gail Hogan's three assets received as gifts and bequests. The checking account was divided, giving Wayne Hogan $2,108.60 and giving the remainder to Gail Hogan, leaving them both with an equal share of the marital estate. The trial court then awarded Wayne Hogan thirty percent of Gail Hogan's three properties, stating it was an equitable distribution. The court stated in its findings of fact:

The *Ruff–Fischer* factors favor Gail in making an equitable distribution. The origin of these assets weighs in favor of distribution to Gail. The station in life of Gail and Wayne individually is that they each enjoy a lifestyle that cannot be supported by the income they each have from employment. The difference in the past has been Gail's income from her property received from her family. The court has previously stated that this lifestyle was a decision the parties have made. This factor weighs in favor of Wayne for a partial distribution of the three assets.

[¶ 24] The record evidences the parties lived on the money received from Gail Hogan's trust fund and the parties used the money from the trust fund to enhance their lifestyle. We conclude the trial court did not err in awarding Wayne Hogan an equitable lien in thirty percent of Gail Hogan's share in the trust fund, the 746 shares of the holding company, and her share of inherited property from her mother's estate.

### IV

[¶ 25] We conclude the district court was not clearly erroneous in its child custody and property awards. We affirm the judgment of the district court.

[¶ 26] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.